IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DAVID S. MAXWELL, DAVID S. MAXWELL, INDIVIDUALLY, AND AS THE EXECUTOR OF THE ESTATE OF VICKI MAXWELL, DECEASED, ERIN PATTON, DANA CHRNYZANOSKI, ROSLYN DAVIS, and DERWOOD DAVIS,<br><br>    Plaintiffs,<br><br>    v.<br><br>CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS, VERIZON WIRELESS, INC., VERIZON WIRELESS (VAW), LLC, and VERIZON WIRELESS SERVICES, LLC,<br><br>    Defendants. | Civil Action No. 19-152-RGA |

**REPORT AND RECOMMENDATION**

**I. INTRODUCTION**

Presently before the court in this personal injury and wrongful death action is a motion to stay and compel arbitration filed by defendants Cellco Partnership d/b/a Verizon Wireless ("Cellco"), Verizon Wireless, Inc. ("Verizon Wireless"), Verizon Wireless (VAW), LLC ("VAW"), and Verizon Wireless Services, LLC ("VWS") (collectively, "Verizon"). (D.I. 15) For the reasons that follow, the court recommends GRANTING Verizon's motion.[1]

---

[1] The briefing for the pending motion is as follows: defendants' opening brief (D.I. 16), plaintiffs' answering brief (D.I. 19), and defendants' reply brief (D.I. 20).

## II. BACKGROUND

### a. The Parties

Vicki Maxwell ("Mrs. Maxwell" or "the decedent") sustained injuries resulting in her death in January of 2018, following the crash of a single engine aircraft in which she was a passenger. (D.I. 13 at ¶¶ 7, 30-32) Plaintiffs include the surviving family members of the decedent as follows: decedent's widower and administrator of her estate, David Maxwell ("Mr. Maxwell"), decedent's daughters, Erin Patton ("Ms. Patton") and Dana Chrnyzanoski ("Ms. Chrnyzanoski"), and decedent's parents, Roslyn Davis ("Mrs. Davis") and Derwood Davis ("Mr. Davis") (collectively, "plaintiffs"). (*Id.* at ¶¶ 7-11) Mr. Maxwell, Ms. Patton, and Ms. Chrnyzanoski are residents of Ohio. (*Id.* at ¶¶ 6, 8-9) Mr. and Mrs. Davis are residents of Illinois. (*Id.* at ¶¶ 10-11)

Cellco is a general partnership existing under the laws of Delaware. (*Id.* at ¶ 12) Verizon Wireless is a Delaware company. (*Id.* at ¶ 13) VAW is a Delaware limited liability company. (*Id.* at ¶ 15) VWS is a Delaware limited liability company. (*Id.* at ¶ 14)

### b. Procedural History

On January 28, 2019, plaintiffs originally filed this personal injury and wrongful death action. (D.I. 1) On March 22, 2019, defendants filed a motion to stay and compel arbitration. (D.I. 8) On April 11, 2019, plaintiffs filed an amended complaint (the "First Amended Complaint").[2] (D.I. 13) On April 24, 2019, defendants filed the instant motion to stay and compel arbitration. (D.I. 15)

---

[2] The First Amended Complaint eliminated almost all references to the customer agreement signed by Mr. Maxwell, Mrs. Maxwell, and Ms. Patton. (*See* D.I. 1; D.I. 13) At oral argument, plaintiffs indicated that they intended to further amend the complaint, so as to eliminate all references to the customer agreement, which contains an arbitration provision. However, the court is not persuaded that the proposed amendment would alter the recommendation.

2

### c. Facts

This action arises from defendants' alleged failure to timely locate Mr. and Mrs. Maxwell's cell phone signals following an aircraft crash. Plaintiffs allege that as a result of defendants' failure, Mrs. Maxwell died from hypothermia. (D.I. 13 at ¶¶ 26-36) Plaintiffs have asserted four claims against the defendants: negligence in Count I, misrepresentation in Count III,[3] intentional and negligent infliction of emotional distress in Count IV, and willful, wanton, outrageous misconduct in Count V. (*Id.* at ¶¶ 37-76)

On January 30, 2018, Mr. Maxwell piloted a single engine Beech 35-A33 Debonair aircraft and Mrs. Maxwell was the front seat passenger. (*Id.* at ¶ 19) At approximately 1:55 p.m., the aircraft was last detected before it went off radar. (*Id.* at ¶ 20) The aircraft experienced an engine failure and crashed in a remote wooded area in eastern Tennessee. (*Id.* at ¶ 21) Mr. and Mrs. Maxwell suffered injuries upon impact and were unable to leave the aircraft. (*Id.* at ¶¶ 22-23)

Ms. Patton subsequently notified law enforcement authorities of the missing aircraft. (*Id.* at ¶ 24) The signal from the aircraft's emergency locater transmitter could not be detected, but Mr. and Mrs. Maxwell had their activated cell phones at the time of the accident. (*Id.* at ¶¶ 25-26) Ms. Patton contacted defendants and requested that they disclose the location of the cell phone signals emitted from Mr. and Mrs. Maxwell's cell phones. (*Id.* at ¶ 27) Ms. Patton explained that Mr. and Mrs. Maxwell were in an emergency situation and rescue efforts were dependent on information locating their aircraft. (*Id.*) Defendants did not provide location

---

[3] Although the claim of misrepresentation immediately follows the claim of negligence, the First Amended Complaint labels negligence as Count I and labels misrepresentation as Count III. (D.I. 13 at ¶¶ 37-64) The subsequent counts are similarly misnumbered.

3

information and instructed Ms. Patton to call again after midnight. (*Id.* at ¶ 28) When Ms. Patton called the defendants at midnight, the Verizon facility was not in service. (*Id.* at ¶ 29)

Over the course of the night, Mrs. Maxwell died from hypothermia. (*Id.* at ¶ 31) First responders found the aircraft and Mr. and Mrs. Maxwell at 8:00 a.m. on January 31, 2018. (*Id.* at ¶ 32)

### d. The Customer Agreement

Ms. Patton established the Verizon cell phone account at issue on March 11, 2013, changing what had been a business account to a personal account which included Ms. Patton, Mr. Maxwell, and Mrs. Maxwell. (D.I. 17, Ex. A; Ex. B-1) On March 14, 2013, Verizon sent Ms. Patton a letter confirming that she activated service for one of the cell phones on the personal account. (D.I. 17, Ex. B-1) A copy of the My Verizon Wireless Customer Agreement (the "Customer Agreement") was attached to this letter. (*Id.*) The Customer Agreement stated that a customer accepts every term of the agreement "whether or not [he or she has] read it" if the customer: (1) "agree[s] in writing, by email, over the phone, or in person;" (2) "open[s] a package that says [he or she is] accepting by opening it;" or (3) "actvat[es] [his or her] service." (*Id.*)

The Customer Agreement included the following language regarding dispute resolution:[4]

> **YOU AND VERIZON WIRELESS BOTH AGREE TO RESOLVE DISPUTES ONLY BY ARBITRATION OR IN SMALL CLAIMS COURT. THERE'S NO JUDGE OR JURY IN ARBITRATION, AND THE PROCEDURES MAY BE DIFFERENT, BUT AN ARBITRATOR CAN AWARD YOU THE SAME DAMAGES AND RELIEF, AND MUST HONOR THE SAME TERMS IN THIS AGREEMENT, AS A COURT WOULD. IF THE LAW ALLOWS FOR AN AWARD OF ATTORNEYS' FEES, AN ARBITRATOR CAN AWARD THEM TOO. WE ALSO BOTH AGREE THAT:**

---

[4] The capitalization and boldface appear in the original Customer Agreement.

(1) THE FEDERAL ARBITRATION ACT APPLIES TO THIS AGREEMENT. EXCEPT FOR SMALL CLAIMS COURT CASES THAT QUALIFY, ANY DISPUTE THAT IN ANY WAY RELATES TO OR ARISES OUT OF THIS AGREEMENT OR FROM ANY EQUIPMENT, PRODUCTS AND SERVICES YOU RECEIVE FROM US (OR FROM ANY ADVERTISING FOR ANY SUCH PRODUCTS OR SERVICES) WILL BE RESOLVED BY ONE OR MORE NEUTRAL ARBITRATORS BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA") OR ANY BETTER BUSINESS BUREAU ("BBB"). YOU CAN ALSO BRING ANY ISSUES YOU MAY HAVE TO THE ATTENTION OF FEDERAL, STATE, OR LOCAL GOVERNMENT AGENCIES, AND IF THE LAW ALLOWS, THEY CAN SEEK RELIEF AGAINST US FOR YOU.

(2) UNLESS YOU AND VERIZON WIRELESS AGREE OTHERWISE, THE ARBITRATION WILL TAKE PLACE IN THE COUNTY OF YOUR BILLING ADDRESS. FOR CLAIMS OVER $10,000, THE AAA'S WIRELESS INDUSTRY ARBITRATION ("WIA") RULES WILL APPLY. IN SUCH CASES, THE LOSER CAN ASK FOR A PANEL OF THREE NEW ARBITRATORS TO REVIEW THE AWARD. FOR CLAIMS OF $10,000 OR LESS, THE PARTY BRINGING THE CLAIM CAN CHOOSE EITHER THE AAA'S WIA RULES OR THE BBB'S RULES FOR BINDING ARBITRATION OR, ALTERNATIVELY, CAN BRING AN INDIVIDUAL ACTION IN SMALL CLAIMS COURT. YOU CAN GET PROCEDURES, RULES AND FEE INFORMATION FROM THE AAA (WWW.ADR.ORG), THE BBB (WWW.BBB.ORG) OR FROM US. FOR CLAIMS OF $10,000 OR LESS, YOU CAN CHOOSE WHETHER YOU'D LIKE THE ARBITRATION CARRIED OUT BASED ONLY ON DOCUMENTS SUBMITTED TO THE ARBITRATOR, OR BY A HEARING IN PERSON OR BY PHONE.

. . .

(4) IF EITHER OF US INTENDS TO SEEK ARBITRATION UNDER THIS AGREEMENT, THE PARTY SEEKING ARBITRATION MUST FIRST NOTIFY THE OTHER PARTY OF THE DISPUTE IN WRITING AT LEAST 30 DAYS IN ADVANCE OF INITIATING THE ARBITRATION. NOTICE TO VERIZON WIRELESS SHOULD BE SENT TO VERIZON WIRELESS DISPUTE RESOLUTION MANAGER, ONE VERIZON WAY, VC52N061, BASKING RIDGE, NJ 07920. THE NOTICE MUST DESCRIBE THE NATURE OF THE CLAIM AND THE RELIEF BEING SOUGHT. IF WE ARE UNABLE TO RESOLVE THE DISPUTE WITHIN 30 DAYS, EITHER PARTY MAY THEN PROCEED TO FILE A CLAIM FOR ARBITRATION. WE'LL PAY ANY FILING FEE THAT THE AAA OR BBB CHARGES YOU FOR ARBITRATION OF THE DISPUTE. IF YOU PROVIDE US WITH SIGNED WRITTEN NOTICE THAT YOU CANNOT PAY THE FILING FEE, VERIZON WIRELESS WILL PAY THE FEE DIRECTLY TO THE AAA OR THE BBB. IF THAT ARBITRATION PROCEEDS, WE'LL ALSO PAY ANY

ADMINISTRATIVE AND ARBITRATOR FEES CHARGED LATER, AS
WELL AS FOR ANY APPEAL TO A PANEL OF THREE NEW
ARBITRATORS (IF THE ARBITRATION AWARD IS APPEALABLE
UNDER THIS AGREEMENT).[5]

(D.I. 17, Ex. B-1; Ex. K) (emphasis in original) The Customer Agreement also noted that it is governed by "the federal law and the laws of the state encompassing the area code of your wireless phone number when you accepted this agreement without regard to the conflicts of laws and rules of that state."[6] (D.I. 17, Ex. K; Ex. L)

On September 20, 2014 and December 28, 2013, respectively, Mr. and Mrs. Maxwell signed electronic receipts (the "Electronic Receipts") upon adding a talk, text, and data share plan. (D.I. 17, Ex. D; Ex. E) The Electronic Receipts stated that, upon signing, the customer agreed to the terms of the Customer Agreement, including the arbitration provision. (D.I. 17, Ex. D; Ex. E) On November 1, 2015, Ms. Patton extended the length of the contract with Verizon and, in doing so, agreed to the Customer Agreement and its arbitration provision. (D.I. 17, Ex. H) In November and December 2015, Mr. Maxwell, Mrs. Maxwell, and Ms. Patton also entered into several Retail Installment Sale Agreements (the "Retail Installment Sale Agreements"),

---

[5] Although the Customer Agreement and its arbitration provision evolved over time, Verizon avers that none of the changes are material to the present dispute. (D.I. 16 at 7 n.4) Plaintiffs do not dispute this characterization. (D.I. 19 at 9-10) The Customer Agreements in effect from 2013 through 2019 include largely similar language that "any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from us (or from any advertising for such products or services) will be resolved by one or more neutral arbitrators before the American Arbitration Association ('AAA') or Better Business Bureau ('BBB')." (D.I. 17, Ex. K; Ex. L; Ex. M; Ex. N) More recent versions of the Customer Agreement from 2018 and 2019 differ in that the arbitration provision states that any claims involving disputes with Verizon's employees or agents are also subject to arbitration. (D.I. 17, Ex. M; Ex. N)

[6] Verizon therefore concludes that this dispute is governed by the Federal Arbitration Act and the laws of Ohio. (D.I. 16 at 8) Plaintiffs do not dispute the applicable governing law. (D.I. 19 at 8 n.1, 12 n.2, 15-16)

which incorporated the Customer Agreement and its arbitration provision by reference. (D.I. 17, Ex. C-1; Ex. C-2; Ex. C-3; Ex. C-4; Ex. C-5)

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable." 9 U.S.C. § 2. Pursuant to the FAA, the court should stay an action and compel arbitration when, in a pending suit, "any issue [is] referable to arbitration." 9 U.S.C. §§ 3, 4. A district court also has the discretion to dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration. *See BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004).

Before a court can compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1-16, the court must determine (1) whether the parties entered into a valid arbitration agreement, and (2) whether the relevant dispute is arbitrable, meaning that it falls within the language of the arbitration agreement. *See Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005); *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998) (stating that where a dispute regarding an arbitration agreement is brought before a district court, the scope of the court's authority to become involved is defined by the FAA). In conducting its review, a court should apply the ordinary principles of contract law. *See* 9 U.S.C. § 2; *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995) (to determine "whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts."). If a contract contains an arbitration clause, a presumption of arbitrability arises. This presumption may be overcome only if "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Sharon Steel Corp. v. Jewell Coal & Coke Co.*, 735 F.2d 775, 778 (3d Cir. 1984). In

addition, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see First Liberty Inv. Grp. v. Nicholsberg*, 145 F.3d 647, 653 (3d Cir. 1998); *Stateside Mach. Co. v. Alperin*, 591 F.2d 234, 240 (3d Cir. 1979) ("doubtful issues regarding the applicability of an arbitration clause are to be decided in favor of arbitration.").

## IV. DISCUSSION

### a. Enforcement of the Arbitration Agreement based upon Equitable Estoppel

Plaintiffs argue that the nonsignatory wrongful death beneficiaries, Ms. Chrnyzanoski, Mr. Davis, and Mrs. Davis, are not subject to the arbitration clause because they do not have a contractual relationship with Verizon. (D.I. 19 at 15-16) Verizon argues that the nonsignatory beneficiaries are bound by the arbitration clause under the doctrine of equitable estoppel. (D.I. 16 at 11-13)

Plaintiffs rely upon the Supreme Court of Ohio's decision in *Peters v. Columbus Steel Castings Co.* in arguing that arbitration clauses cannot restrict nonsignatory beneficiaries to arbitration of wrongful death claims. (D.I. 19 at 15-16) In *Peters*, the court concluded that "[b]ecause Peters's beneficiaries did not sign the plan or any other dispute-resolution agreement, they cannot be forced into arbitration." *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1262 (Ohio 2007). However, Ohio courts have recently noted that "[t]he language used in the *Peters* opinion by the Supreme Court of Ohio indicates their holding does not create a categorical rule prohibiting arbitration agreements in wrongful death cases.'" *Raber v. Emeritus at Marietta*, 49 N.E.3d 345, 350-51 (Ohio Ct. App. 2016). While the court in *Raber* determined that the wrongful death claims at issue were not arbitrable, it did so because the appellants made no argument that traditional principles of Ohio law, such as estoppel, allowed enforcement of the

arbitration agreement against nonsignatory wrongful death beneficiaries. See *id.* (citing *Boyd v. Archdiocese of Cincinnati*, 2015 WL 1600303, at *7 (Ohio Ct. App. Apr. 10, 2015)). Here, defendants argue that the nonsignatory wrongful death beneficiaries are subject to the arbitration provision due to equitable estoppel. (D.I. 16 at 11-13)

"By relying on one part of a contract, the nonsignatory may be estopped from denying other parts of a contract, such as an arbitration clause." *Trinity Health Sys. v. MDX Corp.*, 907 N.E.2d 746, 754 (Ohio Ct. App. 2009). *Wendell v. Cellco Partnership*, C.A. No. 16-50 (S.D. Miss. Nov. 14, 2016), is instructive persuasive authority. (D.I. 16, Ex. 2) In *Wendell*, three plaintiffs were held captive by an escaped criminal suspect. (*Id.* at 1-2) One of the plaintiffs dialed 911 from a cell phone, but the defendant wireless company allegedly routed the 911 call incorrectly. (*Id.* at 3) Only one of the three plaintiffs was a signatory to defendant's customer agreement, which included an arbitration clause. (*Id.* at 2-3) The court concluded that although two of the plaintiffs were nonsignatories, they were estopped from repudiating arbitration because their claims were dependent upon the customer agreement. (*Id.* at 7) The court concluded that, "[a]bsent that contract, neither [nonsignatory plaintiff] would have been able to access [defendant's] wireless network, and the claims they are asserting would not exist." (*Id.*)

Similarly, Mr. Davis, Mrs. Davis, and Ms. Chrnyzanoski's claims are dependent upon the Customer Agreement. Mr. and Mrs. Maxwell's cell phone signals would not exist but for the Customer Agreement. Therefore, without the Customer Agreement, the nonsignatory wrongful death beneficiaries' claims regarding Verizon's alleged failure to provide the location of these cell phone signals would not exist. Accordingly, plaintiffs are estopped from evading the Customer Agreement's arbitration provision. *See Trinity Health Sys.*, 907 N.E.2d at 754 ("[A] nonsignatory who knowingly accepts the benefits of an agreement is estopped from denying a

9

corresponding obligation to arbitrate."). Therefore, the court recommends that a valid and enforceable arbitration provision exists and that all plaintiffs are subject to the Customer Agreement's arbitration provision.

### b. Whether the dispute falls within the scope of the arbitration agreement

If a contract contains an arbitration clause, a presumption of arbitrability arises that can be overcome only if "it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507 (3d Cir. 1990) (internal quotation marks and citations omitted) (emphasis in original); *see also Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000). In light of this strong presumption in favor of arbitrability, "all doubts should be resolved in its favor." *Hayes v. Oakridge Home*, 908 N.E.2d 408, 412 (Ohio 2009). "The FAA instructs courts to refer to principles of applicable state law when determining the existence and scope of an agreement to arbitrate." *Trippe Mfg. Co.*, 401 F.3d at 532. Ohio courts have noted that, in determining whether a claim falls within the scope of an arbitration agreement:

> [w]hether a claim falls within the scope of an arbitration agreement turns on the factual allegations in the complaint rather than the legal causes of action asserted. Thus, if the allegations underlying the claims 'touch matters' covered by the parties' agreements, then those claims must be arbitrated, whatever the legal label attached to them.

*Duryee v. Rogers*, 1999 WL 744341, at *4 (Ohio Ct. App. Sept. 23, 1999); *see also Adtile Tech. Inc. v. Perion Network Ltd.*, 192 F. Supp. 3d 515, 527 (D. Del. 2016) (analyzing whether factual allegations 'touch matters' covered by the contract to determine arbitrability). Plaintiffs suggest that the phrases "relates to" and "arises out of" in the arbitration provision necessarily limit arbitrable disputes to contract claims. (D.I. 19 at 6-10) However, plaintiffs' claims are

10

arbitrable as long as they "touch matters" covered by the parties' contract, and the court does not analyze the legal claims in determining the scope of the arbitration agreement.

Broad arbitration provisions are generally defined as "those that apply to any dispute arising from an agreement." *Compucom Systems, Inc. v. Getronics Finance Holdings B.V.*, 635 F. Supp. 2d 371, 378 (D. Del. 2009). "Narrow arbitration provisions, on the other hand, have been found to 'expressly limit the range of arbitrable disputes to a single category or function.'" *Id.* (quoting *Trap Rock Industries, Inc. v. Local 825, Int'l Union of Operating Engineers*, 982 F.2d 884, 888 n.5 (3d Cir. 1992)). Here, the Customer Agreement contains a broad arbitration provision, as it states that "any dispute that in any way relates to or arises out of this agreement or from any equipment, products and services you receive from us (or from any advertising for any such products or services)" shall be resolved through arbitration. (D.I. 17, Ex. B-1; Ex. K)

Plaintiffs argue that their claims do not arise out of any equipment, products, or services provided by Verizon. (D.I. 19 at 6-12) Furthermore, plaintiffs attempt to distinguish emergency location and location services from the scope of the arbitration provision. (*Id.* at 2-3, 10-12) However, the factual allegations "touch matters" covered by the Customer Agreement, namely "equipment, products, and services" provided by Verizon. (D.I. 17, Ex. K) The Customer Agreement, Electronic Receipts, and Retail Installment Contracts evince the opening and renewal of a Verizon account for cellular phones and cellular phone services. (D.I. 17, Ex. C-1; Ex. C-2; Ex. C-3; Ex. C-4; Ex. C-5; Ex. D; Ex. E; Ex. K) Plaintiffs' claims that Verizon failed to timely locate Mr. and Mrs. Maxwell's cell phone signals necessarily rely on factual allegations relating to equipment or products provided by Verizon, namely, their cell phones. Mr. and Mrs. Maxwell would not have had cell phones to locate but for the Customer Agreement.

Plaintiffs rely on *Frey v. AT&T Mobility, LLC* and *Nicholas v. Grapetree Shores Inc.* to support their argument that the dispute falls outside the scope of the Customer Agreement. (D.I. 19 at 7-9) In *Frey*, plaintiff sued a cell phone service provider for its alleged failure to provide location services for a family member's cell phone in an emergency situation. *See Frey v. AT&T Mobility, Inc.*, 2008 WL 4415328, at *1-2 (N.D. Okla. Sept. 23, 2008). The court in *Frey* denied the motion to dismiss after finding a separate common law duty. *See id.* at *6-11. *Frey* is inapposite, as it did not address a motion to compel arbitration. *See id.* Furthermore, in determining whether a dispute falls within the scope of an arbitration provision, the court does not look to the legal claims alleged, but rather whether the factual allegations touch a matter covered by the parties' contract. *See Duryee*, 1999 WL 744341, at *4; *Adtile Tech. Inc.*, 192 F. Supp. 3d at 527.

*Grapetree* is similarly inapposite. The plaintiff in *Grapetree* entered into an employment agreement with defendant, which included a broad arbitration agreement: "[a]ny controversy or claim arising out of or relating in any way to this Agreement, to the breach of this Agreement, and/or to [plaintiff's] employment with [defendant], or to the suspension or termination of [plaintiff's] employment with [defendant]" was to be arbitrated. *Nicholas v. Grapetree Shores Inc.*, 392 F. App'x 7, 7 (3d Cir. 2010). Following the plaintiff's suspension and termination from his employment with defendant, plaintiff filed an Unfair Labor Practice Charge with the National Labor Relations Board, which ultimately resulted in a settlement agreement between the parties. *See id.* Several years later, one of defendant's employees made allegedly false statements about plaintiff's termination. *See id.* at 8. The Third Circuit affirmed the district court's denial of the defendant's motion to stay and compel arbitration in the resulting defamation suit, concluding that plaintiff's accusations did not relate to the manner with which his employment ended, but

rather statements made years after his employment. *See id.* at 9. The present case is not analogous, in that Verizon's alleged failure to locate Mr. and Mrs. Maxwell's cell phone signals touches matters covered by the broad arbitration provision in the Customer Agreement.

Therefore, the dispute falls within the scope of the arbitration agreement.

### c. Whether the arbitration provision is unconscionable

"[W]hen a party challenges an arbitration provision as unconscionable . . . , the party must show that the arbitration clause itself is unconscionable." *Taylor Bldg. Corp. of Am. v. Benfield*, 884 N.E.2d 12, 22 (Ohio 2008). "The basic test of unconscionability of contract is whether under circumstances existing at the time of making of contract and in light of general commercial background and commercial needs of a particular trade or case, clauses involved are so one-sided as to oppress or unfairly surprise [a] party." *Neubrander v. Dean Witter Reynolds, Inc.*, 610 N.E.2d 1089, 1091 (Ohio Ct. App. 1992) (internal quotation marks omitted). Courts have generally recognized that the doctrine of unconscionability requires both procedural and substantive elements. *See Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 265 (3d Cir. 2003).

#### i. Procedural Unconscionability

Plaintiffs argue that the arbitration provision is procedurally unconscionable because they were presented with a "take it or leave it offer."[7] (D.I. 19 at 15) Plaintiffs suggest that the provision is procedurally unconscionable because of the nature of the parties' relationship. (*Id.*) Plaintiffs admit that the arbitration provision was drafted in a question and answer format to enable lay persons to better understand. (*Id.* at 13) However, plaintiffs aver that the explanations provided were misleading. (*Id.*) Plaintiffs contend that a consumer would be led to

---

[7] Plaintiffs also argue that, had they understood the scope of the arbitration provision, they would have shopped elsewhere. (D.I. 19 at 13)

13

believe that he or she waived a jury trial for disputes emanating from cell phone services alone. (*Id.*) Plaintiffs concede that the arbitration provision was set in block capital letters with a box around the text and selected provisions bolded. (*Id.*) "[I]nequality of bargaining power alone is insufficient to invalidate an otherwise enforceable arbitration contract." *Taylor Bldg. Corp.*, 884 N.E.2d at 23. Plaintiffs' conclusory statements that they were presented with a "take it or leave it offer" and that the arbitration provision was "misleading" are also insufficient to show procedural unconscionability.

### ii. Substantive Unconscionability

Plaintiffs' failure to establish procedural unconscionability eliminates the need to consider substantive unconscionability. However, for the sake of completeness, the court addresses plaintiffs' substantive unconscionability arguments. Plaintiffs attempt to quantify the price of waiving their rights to a jury trial, and argue that it is unconscionable to waive jury trial rights for claims involving death and injury. (D.I. 19 at 14) Plaintiffs provide no legal authority to bolster this assertion. (*Id.* at 14-15) Moreover, courts have concluded that "waiver of one's jury-trial rights is a necessary consequence of agreeing to have an arbitrator decide a dispute." *Taylor Bldg. Corp.*, 884 N.E.2d at 25.

Accordingly, plaintiffs have not established that the arbitration provision is unconscionable. Therefore, the court recommends granting defendants' motion to stay and compel arbitration, pursuant to the Customer Agreement's arbitration provision.

## V. CONCLUSION

For the foregoing reasons, the court recommends granting defendants' motion to stay and compel arbitration. (C.A. No. 19-152, D.I. 15) Furthermore, the court recommends that the present matter be administratively closed to permit the parties to proceed with arbitration.

Within ten (10) days of the completion of arbitration, the parties shall submit a joint status report, informing the court whether arbitration terminated all claims made in the pending suit and whether the court may dismiss the case.

This Report and Recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D. Del. LR 72.1. The parties may serve and file specific written objections within fourteen (14) days after being served with a copy of this Report and Recommendation. Fed. R. Civ. P. 72(b)(2). The objection and responses to the objections are limited to ten (10) pages each. The failure of a party to object to legal conclusions may result in the loss of the right to de novo review in the District Court. *See Sincavage v. Barnhart*, 171 F. App'x 924, 925 n.1 (3d Cir. 2006); *Henderson v. Carlson*, 812 F.2d 874, 878-79 (3d Cir. 1987).

The parties are directed to the court's Standing Order For Objections Filed Under Fed. R. Civ. P. 72, dated October 9, 2013, a copy of which is available on the court's website, http://www.ded.uscourts.gov.

Dated: October 30, 2019

Sherry R. Fallon
United States Magistrate Judge